IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RCK INVESTMENTS, LLC, | ) | CASE NO. 1:25-cv-00915-DAP-RJS |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT KRONE, JAMES LEHMANN, | ) | |
| CODA DESIGN + BUILD, LLC, AND | ) | |
| CODA MANAGEMENT GROUP f/k/a | ) | |
| SSSK CAPITAL FUND, LTD., | ) | |
| | ) | |
| Defendants, Counterclaimants, | ) | |
| and Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **JOINT ANSWER, COUNTERCLAIM,** |
| | ) | **AND THIRD-PARTY COMPLAINT** |
| RODNEY G. DAVIS | ) | **OF DEFENDANTS** |
| c/o Davis & Haymond, P.S.C. | ) | |
| 230 North 2nd Street | ) | (Jury Demand Endorsed Hereon) |
| Richmond, Kentucky 40475, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTOPHER T. RUSSO | ) | |
| 6397 Manor Glen Drive | ) | |
| Medina, Ohio 44256, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ANSWER

Defendants, Scott Krone ("Krone"), James Lehmann ("Lehmann"), CODA Design + Build, LLC ("CDB"), and CODA Management Group f/k/a SSSK Capital Fund, Ltd. ("CMG"), and each of them, for their Joint Answer to the Complaint (Doc. 1-1) of Plaintiff, RCK Investments, LLC ("RCK"), hereby admit, deny, state and aver as follows:

**FIRST DEFENSE**

**<u>Introduction and Nature of Claims</u>**

1.      Defendants deny the allegations set forth in Paragraph One (1) of the Complaint and specifically deny that they, or any of them, (i) breached the Development Contract, (ii) breached any fiduciary duties they may owe to RCK or any other person, and (iii) constitute the alter egos of a non-party, CODA Holding-V, LLC ("Holding"), under Ohio law.

2.      Defendants admit the allegations set forth in Paragraphs Two (2) through Four (4), inclusive, of the Complaint.

3.      Defendants admit the final sentence of Paragraph Five (5) of the Complaint and that Krone and Lehmann manage a chain of indoor storage facilities known as One Stop Storage but deny each and every other and further allegation set forth in such Paragraph Five (5).

4.      Defendants state that the written Development Contract dated July 11, 2022 between RCK and Holding speaks for itself, state that such contract involves a non-party, Holding, and otherwise admit the allegations set forth in Paragraph Six (6) of the Complaint.

5.      Defendants state that the written Development Contract speaks for itself, further state that the allegations of Paragraph Seven (7) of the Complaint concern a non-party to this lawsuit, further state that the allegations set forth in such Paragraph Seven (7) of the Complaint constitute a legal conclusion to which no responsive pleading is required, and to the extent that a responsive pleading would be required, Defendants deny the allegations set forth in Paragraph Seven (7) of the Complaint.

6.      Defendants state that the written Operating Agreement of a non-party, Journal Storage, LLC ("Journal Storage"), speaks for itself and further state that the allegations of Paragraph Eight (8) of the Complaint concern two non-parties to this lawsuit, Holdings and Journal Storage LLC.  Further answering, Defendants admit that a copy of the Journal Storage Operating Agreement is attached as Exhibit "B" to the Complaint and otherwise deny each and every other and further allegation set forth

in such Paragraph Eight (8) of the Complaint.

7.     Defendants admit the allegations set forth in Paragraph Nine (9) of the Complaint.

8.     Defendants state that the allegations set forth in the first sentence of Paragraph Ten (10) of the Complaint relate to Holding, a non-party to this lawsuit, and deny the allegations set forth in the first two sentences of Paragraph Ten (10) of the Complaint, but admit the allegations set forth in the final sentence of such Paragraph Ten (10) of the Complaint.

9.     Defendants state that the allegations set forth in Paragraph Eleven (11) of the Complaint relate to Holding, a non-party to this lawsuit, and otherwise deny the allegations set forth in Paragraph Eleven (11) of the Complaint.  Further answering, Defendants state that RCK and its members, Rodney G. Davis ("Davis") and Christopher T. Russo ("Russo"), took $1 million out of the funds that were supposed to be used for the construction without Defendants' prior knowledge or consent.  On or about January 26, 2024, Defendants informed RCK, Davis and Russo, not that Holdings, a non-party, "refused to make additional capital contributions to fund the remainder of the Project," but rather that Defendants wanted RCK, Davis and Russo to replace the $1 million they took out of the funding and would not further contribute additional funds unless and until RCK, Davis and Russo did so.

10.    Defendants state that the allegations set forth in Paragraphs Twelve (12) and Thirteen (13) of the Complaint relate to Holding, a non-party to this lawsuit, and otherwise deny the allegations set forth in such Paragraphs.

11.    Defendants state that the allegations set forth in Paragraph Fourteen (14) of the Complaint relate to Holding, a non-party to this lawsuit, state that Holding did not renew its charter to exist and do business as an Illinois limited liability company, admit that what purports to be a screenshot from the Illinois Secretary of State's office is attached to the Complaint, and deny each and every other and further allegation set forth in Paragraph Fourteen (14) of the Complaint.

12.    Defendants state that the allegations set forth in Paragraph Fifteen (15) of the

Complaint relate to Holding, a non-party to this lawsuit, and otherwise deny the allegations set forth in such Paragraph and specifically deny that Holding is "insolvent or in the zone of insolvency" and that Defendants co-mingled funds belonging to Holding or otherwise abused its "corporate [*sic*] form."

**Parties, Jurisdiction and Venue**

13.    Defendants deny for want of knowledge or information sufficient to form a belief as to their truth or falsity the allegations set forth in Paragraph Sixteen (16) of the Complaint.

14.    Although "CODA" is not a defined term in the Complaint, if it refers to Holding, a non-party to this lawsuit, Defendants admit the allegations set forth in Paragraph Seventeen (17) of the Complaint.

15.    Although "CODA" is not a defined term in the Complaint, if it refers to Holding, a non-party to this lawsuit, Defendants admit that Lehmann is a managing member of Holding but otherwise deny the allegations set forth in Paragraph Eighteen (18) of the Complaint and state that Lehmann's mailing address is 1434 Eastwind Drive, Jacksonville Beach, Florida 32250.

16.    Defendants admit the allegations set forth in the first sentence of Paragraph Nineteen (19) of the Complaint and that Krone is the managing member of CDB, but deny each and every other and further allegation set forth in Paragraph Nineteen (19) of the Complaint.

17.    Defendants deny the allegations set forth in Paragraph Twenty (20) of the Complaint.

18.    Defendants state that the allegations set forth in Paragraphs Twenty-one (21) through Twenty-seven (27), inclusive, of the Complaint constitute statements of legal conclusions as to which no responsive pleading is required.  To the extent a response to the allegations set forth in such Paragraphs is required or appropriate, Defendants state that the Development Contract and Operating Agreement speak for themselves, admit that the address of the Lorain Journal Property is accurate, and deny each and every other and further allegation set forth in such Paragraphs.

## Factual Allegations

I. **Defendants are Alter Egos of CODA Holding-V, LLC**

19.     Defendants deny the truth of the heading to this section of allegations above and deny the allegations set forth in Paragraph Twenty-eight (28) of the Complaint.

20.     Defendants admit the allegations set forth in Paragraph Twenty-nine (29) of the Complaint with respect to CMG, and admit that Krone manages the daily affairs of CDB, but deny each and every other and further allegation set forth in such Paragraph Twenty-nine (29) of the Complaint.

21.     Defendants state that the allegations set forth in Paragraphs Thirty (30) and Thirty-one (31) relate in part to Holding, a non-party to this lawsuit, and otherwise deny the allegations set forth in such Paragraphs.

II. **RCK and CODA [*sic*] Form Journal Storage to Facilitate Development of an Indoor Self-Storage Facility at the Lorain Journal Property.**

22.     Defendants deny for want of knowledge or information sufficient to form a belief as to their truth or falsity the allegations set forth in Paragraphs Thirty-two (32) through Thirty-five (35), inclusive, of the Complaint.

23.     Defendants admit that Krone and Lehmann are principals of One Stop Storage and Holding, both of which are non-parties to this lawsuit, and of CMG, admit that Krone is the principal of CDB, admit that Davis and Russo were introduced to Lehmann and Krone at some point in time, and deny each and every other and further allegation set forth in Paragraph Thirty-six (36) of the Complaint.

24.     Defendants deny the allegations set forth in Paragraph Thirty-seven (37) of the Complaint.

25.     Defendants deny that Holding, a non-party to this lawsuit, "had design, build out, and construction management experience" but otherwise admit the allegations set forth in Paragraph

5

Thirty-eight (38) of the Complaint.

26.     Defendants state that the allegations set forth in Paragraphs Thirty-nine (39) and Forty (40) of the Complaint relate to Holding, a non-party to this lawsuit, state that the Development Contract speaks for itself, and otherwise admit the allegations set forth in Paragraphs Thirty-nine (39) and Forty (40) of the Complaint.

27.     Defendants state that the allegations of Paragraph Forty-one (41) of the Complaint relate in part to Holding, a non-party to this lawsuit, state further that the Development Contract speaks for itself, admit that it called for obtaining $3,225,000 of financing, state (since the allegation is ambiguous) that Krone and Lehmann agreed to become borrowers on the WesBanco refinancing in their own name along with Journal Storage, Davis and Russo, but not on the original Citizens Bank financing, and deny each and every other and further allegation set forth in Paragraph Forty-one (41) of the Complaint.

28.     Defendants state that the allegations of Paragraph Forty-two (42) of the Complaint relate in part to Holding, a non-party to this lawsuit, state further that the Development Contract speaks for itself, admit the allegations set forth in the second sentence of Paragraph Forty-two (42) of the Complaint, and deny each and every other and further allegation set forth in such Paragraph.

29.     Defendants state that the allegations of Paragraphs Forty-three (43) through Forty-five (45), inclusive, of the Complaint relate in part to Holding, a non-party to this lawsuit, state further that the Development Contract speaks for itself, state further that the Operating Agreement speaks for itself, and otherwise admit the allegations set forth in Paragraphs Forty-three (43) through Forty-five (45), inclusive, of the Complaint.

III.     **CODA Holding-V, LLC Fails to Develop the Property and Refuses to Comply with the Development Agreement Unless It Receives Additional Compensation.**

30.     Defendants specifically deny the truth of the heading to this section of allegations above.

31.     Defendants state that the allegations set forth in Paragraph Forty-six (46) of the Complaint relate to Holding, a non-party to this lawsuit, admit that the staircase and office were demolished but state that it was the demolition contractor's mistake for which it paid through a back-charge at the conclusion of its work, admit that one of the garage doors, the man door, and the radiators were not demolished because it was not necessary to demolish them, but deny each and every other and further allegation set forth in Paragraph Forty-six (46) of the Complaint.  Further answering, Defendants state that the $193,000 that was spent, to which the allegations of such Paragraph apparently refer, included the cost of properly and lawfully remediating the extensive asbestos that permeated throughout the Property even though RCK, Davis and/or Russo represented to Defendants that the Property was asbestos-free.

32.     Defendants deny the allegations set forth in Paragraph Forty-seven (47) of the Complaint.  Further answering, Defendants state that Krone stated that it would not make additional capital contributions to the Project unless and until RCK and its principals returned the $1 million they took out of the Project funds in order to restore the full equity capitalization of the Journal Storage company and Project.

33.     Defendants state that the allegations set forth in Paragraph Forty-eight (48) of the Complaint relate to Holding, a non-party to this lawsuit.  Defendants state further that Holding never agreed at the outset of the Project to make payments on the loan and that payments were never part of the loan arrangements at the outset, so it never had a "proportionate share of the loan."  The interest payments were included in the amount of the financing and were supposed to be reserved for paying such interest each month.  Further answering, Defendants deny each and every other and further allegation set forth in Paragraph Forty-eight (48) of the Complaint.

34.     Defendants state that the allegations set forth in Paragraph Forty-nine (49) of the Complaint relate to Holding, a non-party to this lawsuit.  Defendants deny for want of knowledge or

information sufficient to form a belief as to their truth or falsity the allegations set forth in the last clause of such Paragraph regarding failures to pay subcontractors and mechanic's liens being placed on the Property because RCK and its principals fired Defendants and prevented them from continuing to work on the Project.  Further answering, Defendants deny each and every other and further allegation set forth in Paragraph Forty-nine (49) of the Complaint.

35.     Defendants state that the allegations set forth in Paragraphs Fifty (50) and Fifty-one (51) of the Complaint relate to Holding, a non-party to this lawsuit.  Defendants deny the allegations set forth in such Paragraphs.  Further answering, Defendants state that CDB was paid approximately $357,000 for working on the Project in accordance with the construction contract that retained CDB's services on the Project.  Defendants state further that the CDB construction contract and the amounts paid to CDB thereunder were disclosed to RCK before RCK fired Defendants from continuing to work on the Project.

36.     Defendants deny the allegations set forth in Paragraphs Fifty-two (52) through Fifty-four (54), inclusive, of the Complaint.

37.     Defendants state that the allegations of Paragraph Fifty-five (55) of the Complaint relate to Holding, a non-party to this lawsuit.  Defendants admit that a stairwell was enclosed which should not have been enclosed because of a mistake by the demolition contractor, not Holding's mistake, and for which the contractor paid to correct through a back-charge at the conclusion of its work, and Defendants deny each and every other and further allegation set forth in Paragraph Fifty-five (55) of the Complaint.

38.     Defendants state that the allegations of Paragraphs Fifty-six (56) and Fifty-seven (57) of the Complaint relate to Holding, a non-party to this lawsuit.  Defendants deny the allegations set forth in such Paragraphs.

**Count One**
**(Declaratory Judgment - Breach of Development Contract)**

39.      Defendants reallege and incorporate by reference each and every admission, denial, statement and allegation of this Answer set forth in Paragraphs One (1) through Thirty-eight (38), inclusive, above as if the same were fully rewritten herein.

40.      Defendants state that the allegations set forth in Paragraphs Fifty-nine (59) through Seventy-nine (79), inclusive, of the Complaint principally relate to Holding, a non-party to this lawsuit.  Further answering, Defendants state that the allegations set forth in Paragraphs Fifty-nine (59) through Seventy-nine (79), inclusive, of the Complaint are the subject of a pending arbitration proceeding that RCK invoked and are subject to the different arbitration clauses set forth in the Development Contract and the Operating Agreement.  Further answering, Defendants deny the allegations set forth in Paragraphs Fifty-nine (59) through Seventy-nine (79), inclusive, of the Complaint.

41.      Defendants admit that RCK seeks the relief from the Court identified in Paragraph Eighty (80) of the Complaint, but Defendants deny that it is entitled to such relief, deny that such relief is necessary, proper, or appropriate under the facts and circumstances of this case, and otherwise deny each and every other and further allegation set forth in Paragraph Eighty (80) of the Complaint.

**Count Two**
**(Declaratory Judgment – Breach of Fiduciary Duty)**

42.      Defendants reallege and incorporate by reference each and every admission, denial, statement and allegation of this Answer set forth in Paragraphs One (1) through Forty-one (41), inclusive, above as if the same were fully rewritten herein.

43.      Defendants deny the allegations set forth in Paragraph Eighty-two (82) of the Complaint.

44.      Defendants state that the allegations set forth in Paragraphs Eighty-three (83) through

Eighty-seven (87), inclusive, of the Complaint principally relate to Holding, a non-party to this lawsuit.  Further answering, Defendants state that the allegations set forth in Paragraphs Eighty-three (83) through Eighty-seven (87), inclusive, of the Complaint are the subject of a pending arbitration proceeding that RCK invoked and are subject to the different arbitration clauses set forth in the Development Contract and the Operating Agreement.  Further answering, Defendants admit that Holding was a closely held limited liability company that owned 19% of Journal Storage LLC, but Defendants deny each and every other and further allegation set forth in Paragraphs Eighty-three (83) through Eighty-seven (87), inclusive, of the Complaint.

45.    Defendants deny the allegations set forth in Paragraphs Eighty-eight (88) through Ninety (90) of the Complaint.

46.    Defendants state that the allegations set forth in Paragraphs Ninety-one (91) through One Hundred Three (103), inclusive, of the Complaint principally relate to Holding, a non-party to this lawsuit.  Further answering, Defendants state that the allegations set forth in Paragraphs Ninety-one (91) through One Hundred Three (103), inclusive, of the Complaint are the subject of a pending arbitration proceeding that RCK invoked and are subject to the different arbitration clauses set forth in the Development Contract and the Operating Agreement.  Further answering, Defendants deny the allegations set forth in Paragraphs Ninety-one (91) through One Hundred Three (103), inclusive, of the Complaint.

47.    Defendants admit that RCK seeks the relief from the Court identified in Paragraph One Hundred Four (104) of the Complaint, but Defendants deny that it is entitled to such relief, deny that such relief is necessary, proper, or appropriate under the facts and circumstances of this case, and otherwise deny each and every other and further allegation set forth in Paragraph One Hundred Four (104) of the Complaint.

## Count Three
## (<u>Unjust Enrichment</u>)

48.     Defendants reallege and incorporate by reference each and every admission, denial, statement and allegation of this Joint Answer set forth in Paragraphs One (1) through Forty-seven (47), inclusive, above as if the same were fully rewritten herein.

49.     Defendants state that the allegations set forth in Paragraphs One Hundred Six (106) and One Hundred Seven (107) of the Complaint principally relate to Holding, a non-party to this lawsuit. Further answering, Defendants state that the allegations set forth in Paragraphs One Hundred Six (106) and One Hundred Seven (107) of the Complaint are the subject of a pending arbitration proceeding that RCK invoked and are subject to the different arbitration clauses set forth in the Development Contract and the Operating Agreement.  Further answering, Defendants deny the allegations set forth in Paragraphs One Hundred Six (106) and One Hundred Seven (107) of the Complaint.

50.     Defendants deny the allegations set forth in Paragraphs One Hundred Eight (108) through One Hundred Ten (110), inclusive, of the Complaint.

### SECOND DEFENSE

51.     The Complaint fails to state a claim against Defendants, in whole or in part, upon which relief can be granted.

### THIRD DEFENSE

52.     The claims against Defendants alleged in the Complaint, in whole or in part, are the subject of and have substantial overlap with the pending Arbitration initiated by RCK against Holding and thus are duplicative of the Arbitration proceeding.

### FOURTH DEFENSE

53.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by RCK's unclean hands.

**FIFTH DEFENSE**

54.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by RCK's wrongful conduct and by the wrongful conduct of its members, Davis and Russo, who are not parties to RCK's action against Defendants.

**SIXTH DEFENSE**

55.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by operation of the doctrines of waiver, laches, and/or estoppel.

**SEVENTH DEFENSE**

56.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by the lack of consideration or failure of consideration in this matter.

**EIGHTH DEFENSE**

57.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by payment, offset, novation, accord and satisfaction, and/or release.

**NINTH DEFENSE**

58.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by wrongful acts on the part of third parties that were involved in the relevant transactions or circumstances.

**TENTH DEFENSE**

59.     The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by the intentionally tortious misconduct or negligence of third parties that were involved in the relevant transactions or circumstances, or of his, her or its agents or servants acting within the course and scope of their respective employment.

**ELEVENTH DEFENSE**

60.     The claims and/or relief sought against Defendants in the Complaint are barred,

diminished or fail, in whole or in part, by potential operation of the doctrine of collateral estoppel.

## TWELFTH DEFENSE

61. The claims and/or relief sought against Defendants in the Complaint are barred, diminished or fail, in whole or in part, by operation of the statute of frauds.

## THIRTEENTH DEFENSE

62. The claims against Defendants alleged in the Complaint are barred, diminished or fail, or RCK's right to recovery has been forfeited, in whole or in part, as the result of material breaches by RCK and/or its members, Davis and Russo, who are not named parties in RCK's action against Defendants, and/or by third parties who were involved in the relevant transactions or circumstances and who breached their contracts with and contractual obligations to RCK and/or to Defendants.

## FOURTEENTH DEFENSE

63. The claims against Defendants alleged in the Complaint are barred, diminished or fail, or RCK's right to recovery has been forfeited, in whole or in part, as the result of material breaches by third parties involved in the relevant transactions or circumstances of their fiduciary duties to RCK and/or to Defendants.

## FIFTEENTH DEFENSE

64. RCK's claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by operation of the economic loss rule.

## SIXTEENTH DEFENSE

65. The claims against Defendants alleged in the Complaint are barred, diminished or fail, in whole or in part, by operation of the doctrines of ratification and affirmance.

## SEVENTEENTH DEFENSE

66. The claims against Defendants in the Complaint are barred, diminished or fail, in whole or in part, by RCK's failure to join necessary and indispensable parties to this action.

13

### EIGHTEENTH DEFENSE

67.     The claims and/or relief sought against Defendants are barred, diminished or fail, in whole or in part, by RCK's failure to mitigate some or all of its claimed damages.

### NINETEENTH DEFENSE

68.     Any damages that RCK may have sustained were caused, in whole or in part, by RCK's own actions or omissions, or by the acts or omissions of its members, Davis and/or Russo, who are not named as plaintiffs in this lawsuit, or by the acts or omissions of other parties for whose conduct Defendants are not responsible and had no power or opportunity to control.

### TWENTIETH DEFENSE

69.     Defendants hereby give notice that they intend to rely upon such other and further affirmative defenses as may become available or apparent during the course of this litigation, and hereby reserve their right to amend this Answer to assert any such defense.

WHEREFORE, Defendants, Scott Krone, James Lehmann, CODA Design + Build LLC, and CODA Management Group f/k/a SSSK Capital Fund, Ltd., and each of them, having fully answered the Complaint, hereby pray that judgment be entered in their favor on such Complaint, or that the Complaint be dismissed with prejudice as to each of them, and that they be allowed to go hence with their costs, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

### COUNTERCLAIM

Defendants and Counterclaimants, Scott Krone ("Krone"), James Lehmann ("Lehmann"), CODA Design + Build, LLC ("CDB"), and Scott Krone and James Lehmann d/b/a CODA Management Group ("CMG"), and each of them, for their Joint Counterclaim against Plaintiff, RCK Investments, LLC ("RCK"), hereby claim, allege, state and aver as follows:

1.      Counterclaimants reallege and incorporate by reference the claims, allegations,

admissions, denials, statements and averments set forth in Paragraphs One (1) through Sixty-nine (69), inclusive, of the Answer set forth above.

2.      Counterclaimants bring this Counterclaim against RCK as a result of RCK's pattern of misconduct, self-dealing, misappropriation, fraud, misrepresentations, breaches of contract, and breaches of fiduciary duties in connection with a development project.  RCK has misappropriated Journal Storage resources to fund its own personal ventures, caused loan defaults with Journal Storage's lender, and deprived Journal Storage, LLC of critical resources to pay subcontractors and complete project construction.   In addition, RCK's members, Rodney G. Davis ("Davis") and Christopher T. Russo ("Russo"), are also personally liable for the wrongful conduct alleged below, which is the subject of the claims asserted in the Third-Party Complaint herein.

### THE PARTIES

3.       Krone is an individual who is a citizen of the State of Illinois and who resides in Waukegan, Illinois.  Krone is also the sole member of CODA Holding-V, LLC ("Holding"), an Illinois limited liability company and therefore Holding is likewise a citizen of the State of Illinois.

4.      Lehmann is an individual who is a citizen of the State of Florida and who resides in Jacksonville Beach, Florida.

5.      CDB is an Illinois limited liability company.  Its sole member is Krone and therefore it is a citizen of the State of Illinois.

6.      CMG is the trade name under which Krone and Lehmann occasionally do business and is listed on a website as such.  It has no separate corporate or legal existence and never has.

7.      RCK is an Ohio limited liability company with its principal place of business in Ohio.  Its members are Davis, an individual who is a citizen of the State of Kentucky, and Russo, an individual who is a citizen of the State of Ohio.

8.      Holding and RCK organized and are members of Journal Storage, LLC, an Ohio limited

liability company that is not a party in either this action or in the pending Arbitration.

## FACTUAL ALLEGATIONS

**A.**    **Russo and Davis Purchase the Property and Meet Krone and Lehmann.**

9.    In or about February 2021, Davis and Russo purchased the property located at 1657 Broadway Avenue, Lorain, Ohio (the "Property"), intending to develop one of the buildings on the Property, the building that formerly housed the Lorain Journal newspaper, into a self-storage facility.

10.    Sometime in 2022, Krone and Lehmann were introduced to Davis and Russo by a representative of Peoples Bank & Trust of Hazard ("Peoples Bank").  On information and belief, Peoples Bank introduced Krone and Lehmann to Davis and Russo because Krone and Lehmann had experience with self-storage facility development that Davis and Russo lacked.

11.    After a number of initial telephone conversations, Krone and Lehmann traveled to Ohio to visit the Property and meet with Russo.

**B.**    **The Parties Agree to Form a Joint Venture to Develop the Property.**

12.    After their meeting, the parties continued to engage in discussions about the development of the Property into a self-storage facility (the "Project").  For example, during Spring and Summer 2022, Davis, Russo, Krone and Lehmann exchanged email correspondence regarding, among other things, architectural plans, financial models for the Project, market research, and construction management services.  The eventual plan was that, after completion of the Project, the Property would be marketed and leased.  Upon stabilization, the Property might be packaged with nine other self-storage facilities owned by Krone's and Lehmann's entities and hopefully sold for a profit.

13.    In these initial discussions, RCK and its members led Krone and Lehmann to believe that RCK had already incurred costs for the architect, title work, insurance, surveys, and other preliminary expenses associated with Project (the "Preliminary Work").

14.    Davis and Russo further represented to Krone and Lehmann that they owned the

16

Property and would contribute the Property as equity to the Project.  Davis and Russo also represented to Krone and Lehmann that the Property was valued at $1.025 million.  Finally, Davis and Russo specifically represented to Krone and Lehmann that the former Lorain Journal building did not contain any asbestos.

15.     On or about June 13, 2022, Russo sent Lehmann and Krone a proposal whereby Holding would oversee and build the Project.  RCK's proposal specifically state that post-sale, RCK would receive, among other amounts, its $1.025 million equity contribution (as a result of its contribution of the Property free and clear of all liens) to Journal Storage, LLC for the Project.

16.     The parties eventually agreed to work together on the Project.  On or about July 11, 2022, RCK and Holding entered into the Development Contract and agreed "to jointly develop a portion of the Lorain Journal Building into [an] indoor self-storage facility[.]"  Development Contract, pg. 1 (attached hereto as Exhibit "A" and incorporated by reference herein).

17.     Pursuant to the Development Contract, RCK and Holding agreed to form Journal Storage, LLC for "the purposes of jointly developing the indoor self-storage facility contemplated" in the Development Contract. (*Id.*, ¶ 1.)  RCK and Holding entered into an Operating Agreement for Journal Storage, LLC (attached hereto as Exhibit "B" and incorporated by reference herein).  RCK and Holding agreed that Journal Storage, LLC would be owned and operated pursuant to the terms of that Operating Agreement. Consistent with the collaborative nature of the parties' relationship, Holding and RCK agreed that the Operating Agreement could only be amended "by written approval of all of the Members."  (*Id.*, ¶ 17.4.)

18.     Pursuant to Paragraph 1 of the Development Contract and Exhibit A of the Operating Agreement, RCK and Holding agreed that Holding would own 19% of Journal Storage, LLC and RCK would own 81% of the company.  Holding agreed to this low ownership stake in recognition of the fact that RCK had already purchased the Property, which Holding and its members believed was

17

RCK's equity contribution to the Project, and believed that RCK had incurred expenses for the Preliminary Work.

19.     The Development Contract also provided that Journal Storage, LLC would obtain bank financing in the amount of $3,225,000.00 for the purchase and development of the Property. (Development Contract, ¶ 3.)

**C.      Journal Storage, LLC Obtains Financing From Citizens Bank.**

20.     Pursuant to the terms of the Development Contract, it was the parties' intent "to obtain financing through Peoples Bank & Trust of Hazard; however, if necessary other lenders may be considered." (*Id.*)

21.     Peoples Bank declined to extend financing to Journal Storage, LLC because of its prior loan commitments with RCK.  Davis represented to Krone and Lehmann that Peoples Bank referred Journal Storage, LLC to Citizens Bank and WesBanco.

22.     Journal Storage, LLC submitted a loan application to WesBanco in December 2022. WesBanco then provided a summary of proposed terms and conditions, including a loan in the amount of $3,225,000 (the amount agreed to in the Development Contract and shown on the Journal Storage Project Summary), and submitted a list of questions to be answered by Journal Storage, LLC.

23.     Davis subsequently informed Krone, Lehmann and Holding that WesBanco was requiring the Property to be subdivided so an additional improvement on the newly subdivided south parcel could provide an "Abundance of Caution" lien.  According to Davis, the process for subdividing the Property was going to delay the WesBanco loan closing by approximately six months.

24.     With the goal of commencing construction sooner and not waiting for the Property to be subdivided before getting a loan from WesBanco, RCK — and Russo in particular — urged that Journal Storage, LLC apply for a bridge loan with Citizens Bank.  Davis represented to Krone, Lehmann and Holding that the bridge loan from Citizens Bank would cover initial expenses for the

Development Project until Journal Storage, LLC was able to close on the loan with WesBanco.

25.     Krone and Lehmann agreed to obtain a bridge loan from Citizens Bank in justifiable reliance on the express representation made by Russo and Davis that the Citizens Bank loan would be used for preliminary construction and for payment of initial Project expenses such as permitting and demolition costs.

26.     On or about January 3, 2023, Krone and Lehmann received an email from Davis requesting that they personally complete a loan application and guaranty form for Citizens Bank. Krone and Lehmann completed the requested documentation based on the representations of RCK, Davis and Russo that the Citizens Bank loan would be used to pay for the initial, limited expenses of the Project.  RCK, Davis and Russo did not provide any other information or documents concerning the Citizens Bank loan to Krone, Lehmann or Holding.

**D.     The WesBanco Loan Closes and Krone and Lehmann Discover Fraudulent Statements and Conduct by RCK, Davis and Russo.**

27.     On or about May 11, 2023, the Property was subdivided as requested by WesBanco, and the WesBanco loan was scheduled to close on or about May 26, 2023.  On or about May 24, 2023, Krone, Lehmann and Holding received a proposed closing statement which included a loan payoff of a first mortgage on the Property to Citizens Bank in the amount of $1,071,090.76 and an additional payment to Russo in the amount of $30,568.36 for supposed real estate tax reimbursements.  In other words, just 48 hours before the WesBanco loan was to close, Krone, Lehmann and Holding learned for the first time that RCK, Davis, and Russo used the proceeds of the Citizens Bank loan *not* for construction costs but to pay for the purchase of the Property and for property tax payments.

28.     Furthermore, when Krone, Lehmann and Holding finally received disbursement instructions from the Citizens Bank loan, they learned it authorized disbursements of (i) $490,139.75 for an unrelated Citizens Bank loan to Journal Storage, LLC about which Krone, Lehmann and Holding know absolutely nothing; and (ii) $534,028.79 payable to RCK.  In other words, not only was

19

the Citizens Bank bridge loan completely used up and distributed the day it closed, it was used up to pay expenses that had nothing to do with construction of the Project.

29.     The discovery that RCK, Davis and/or Russo had misappropriated funds and concealed their activities from Krone, Lehmann and/or Holding was shocking to them because they had believed — consistent with Russo's, Davis', and RCK's express representations — that the Citizens Bank loan would be used only for the initial, relatively minor costs of the Preliminary Work.

30.     In addition, the payment for the Property was directly contrary to the agreement reached among RCK, Russo, Davis, Krone, Lehmann and Holding that RCK, Russo and Davis would not receive payment for the Property until *after* the Development Project was complete.  Indeed, multiple emails were exchanged between RCK and Holding explicitly indicating that RCK would not receive payment for the Property until the Project's completion.

31.     By paying themselves for the Property, taxes, and to pay off another mystery loan, RCK, Davis and Russo caused the WesBanco loan to be in default immediately upon closing of the loan.  Specifically, the WesBanco loan agreement required Journal Storage, LLC to have contributed capital to the Project amounting to at least 15% of the Project's appraised "as completed" value. Additionally, the WesBanco loan agreement required Journal Storage, LLC to maintain at least $325,000 in unencumbered liquidity at all times.

32.     Moreover, in the WesBanco loan agreement, Journal Storage, LLC represented that, on or before the date of first disbursement of loan proceeds, it had good and marketable title to the Property free and clear of all defects, liens, and encumbrances.

33.     By taking loan proceeds to pay themselves for the Property, RCK, Davis and Russo also removed their required capital contribution – *i.e.*, the Property – and created additional debt for Journal Storage, LLC.

34.     As a result of the additional debt for Journal Storage, LLC that RCK, Davis and Russo

created, Journal Storage, LLC did not have sufficient funds available to complete construction of the Project.  If RCK, Davis and Russo had not taken $1,109,897.05 from the WesBanco loan proceeds to pay themselves and to pay off other debts unrelated to the Project, the WesBanco loan would not have been be depleted and Journal Storage, LLC would have had the funds available to finish the Project and pay for final Project costs.

35.     However, as a direct and proximate result of the actions of RCK, Davis and Russo, and each of them, jointly and severally, Journal Storage, LLC has been deprived of the funds necessary to complete construction, to operate the Joint Venture, to pay interest on the WesBanco loan, and to lease the available space of the Project.

**E.     Holding Contracted with CDB to Perform Work for the Project, and CDB Did Perform Work on the Project, Until RCK Purported to Terminate CDB's Work as Construction Manager and Holding's Involvement on the Project.**

36.     Holding contracted with CDB to perform work on the Project given CDB's experience in similar development projects.  Krone, Lehmann and Holding informed RCK, Davis and Russo about the CDB construction contract and all amounts payable to CDB for being the construction manager for the Project.  Pursuant to its construction contract, CDB performed work on the Project until May 2024.

37.     On or about May 8, 2024, at an alleged meeting of Journal Storage, LLC attended only by Russo on behalf of RCK and with no notice to Holding or its members, Krone and Lehmann, RCK attempted to: (i) amend multiple provisions of the Operating Agreement; (ii) extend a loan to Journal Storage, LLC from RCK in the amount of $250,000 with an interest rate of 12%; (iii) terminate Holding and CDB as the construction manager of the Project; (iv) approve the hiring of a new construction manager; (v) approve Journal Storage, LLC's retention of Andrew Fiorella of Benesch Friedlander Coplan & Aronoff LLP for purposes of filing a lawsuit or arbitration action against Holding, Krone, Lehmann and CDB; (vi) pay itself for certain alleged expenses for utilities, insurance,

property taxes, interest payments, and "a true-up of the construction management fees;" (vii) pay itself close to $90,000 for a budget overrun that it caused; (viii) approve the engagement of a real estate broker to sell the Property (after being improved by Coda and near-completion); and (ix) pay itself for its attorney fees and costs incurred in connection with the dispute with Krone, Lehmann, Holding and CDB.  All of these actions are unlawful and improper and are collectively referred to herein as the "Improper Actions."

38.     The amendments to the Operating Agreement that RCK, Russo and Davis attempted to make — in violation of Ohio law and the terms of the Operating Agreement itself — two changes to the Operating Agreement's provisions regarding (i) capital contributions, and (ii) member consent for the sale of Journal Storage, LLC's assets.

39.     Specifically, the Operating Agreement provides, in Paragraph 5, that the "Members shall not be compelled to make any capital contribution absent an affirmative vote of all members and no member shall bring legal action asking for any court to compel a contribution absent an affirmative vote of all members."  Nevertheless, at the purported May 8, 2024 meeting, RCK, Russo and Davis attempted to eliminate the requirement in the Operating Agreement that all members of Journal Storage must consent to a capital contribution, in violation of the provisions of the Operating Agreement.

40.     The second change to the Operating Agreement that RCK, Davis and Russo attempted to make at the supposed meeting on May 8, 2024, was to Paragraph 9.2 of the Operating Agreement, which states that the "[u]nanimous vote of the members shall be required" for the "sale of substantially all of the assets of the company[.]"  RCK, Russo and Davis attempted to change this provision so that only "the affirmative vote of a majority interest of all Members" is required for the sale of substantially all of Journal Storage, LLC's assets.

41.     On or about May 31, 2024, RCK sent a Notice of Termination to Holding that attempted

to terminate Holding's and CDB's role as the construction manager of the Project and provided a copy of a document that purported to be "Minutes of Member Meeting" from May 8, 2024.

42.     On information and belief, Journal Storage, LLC has not retained counsel to pursue any claims or lawsuits against Krone, Lehmann, Holding or CDB.  Instead, RCK has engaged counsel to pursue this litigation against Krone, Lehmann, and CDB and the pending Arbitration proceeding against Holding instead of Journal Storage, LLC.

43.     As of the purported termination of Holding and CDB in May 2024, as a result of Holding's and CDB's work as of that date, the Project was approximately 90% complete.

44.     The timing of RCK's Improper Actions is not a coincidence.  In fact, the majority of Holding's and CDB's work on the Project had been performed by that point in time and the Project was very close to completion.  At the behest of its members, Davis and Russo, RCK attempted to squeeze out Holding and CDB, and with them Krone and Lehmann, from the Project so that it can sell the Project without Holding's involvement and thus without paying Holding, CDB, Krone and Lehmann for their hard work and investment.

## COUNT ONE
### (Breach of Development Contract by RCK)

45.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Forty-four (44), inclusive, above as if the same were fully rewritten herein.

46.     The Development Contract is a valid, binding and enforceable contract.  Krone and Lehmann as members of Holding fully performed all of the obligations required of it under the terms of the Development Contract.

47.     The Development Contract does not permit RCK or its members, Davis and Russo, to terminate Holding's involvement in the Project, or Holdings' status as the construction manager on the Project, or Holdings' right to enter into a construction contract with CDB to delegate those

23

responsibilities to CDB as a more experienced construction manager of similar projects.

48.     RCK breached the Development Contract by attempting to terminate Holding as the contraction manager of the Project and, through Holding, CDB's services under its construction contract.

49.     As a direct and proximate result of RCK's breach of the Development Contract and termination of CDB's services as the construction manager, Holding and CDB, and each of them, have sustained damages to their respective business and rights to payment, and continue to sustain damages to their respective business and rights to payment, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

50.     Krone and Lehmann were known to and intended by RCK, Davis and Russo to be third-party beneficiaries of the Development Contract between RCK and Holding and of the construction contract delegating the construction management responsibilities for the Project to CDB.

51.     As a direct and proximate result of RCK's breach of the Development Contract and termination of Holding's involvement in the Project and CDB's services as the construction manager, Krone and Lehmann have suffered damages to their respective business and pecuniary interests as third-party beneficiaries, and continue to suffer damages to their respective business and pecuniary interests as third-party beneficiaries, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

**COUNT TWO**
**(Breach of Operating Agreement against RCK)**

52.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Fifty-one (51), inclusive, above as if the same were fully rewritten herein.

53.     The Operating Agreement is a valid, binding and enforceable contract.  Krone and Lehmann as members of Holding fully performed all of the obligations required of it under the terms

of the Operating Agreement.

54.     RCK, Davis and/or Russo breached the Operating Agreement by committing the Improper Actions.  The Operating Agreement does not permit RCK to unilaterally amend its terms. Indeed, pursuant to Paragraph 17.4 of the Operating Agreement, amendments are possible only through written approval of ***all*** of the Members.

55.     As a member of Journal Storage, LLC, Holding has never approved — in writing or otherwise — amending the Operating Agreement.  Holding has also not provided its approval for any of RCK's, Davis' or Russo's Improper Actions.

56.     Nevertheless, RCK attempted to unilaterally amend the Operating Agreement to eliminate the requirement of unanimous member consent for a capital contribution and to sell substantially all of Journal Storage, LLC's assets.

57.     RCK, Davis and Russo breached the Operating Agreement by attempting to unilaterally amend the Operating Agreement without Holding's approval and by RCK's other Improper Actions.

58.     As a direct and proximate result of the foregoing breaches of the Operating Agreement, Holding has sustained damages, and continues to sustain damages, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

59.     Krone and Lehmann were known to and intended by RCK, Davis and Russo to be third-party beneficiaries of the Operating Agreement for Journal Storage, LLC.

60.     As a direct and proximate result of the foregoing breaches of the Operating Agreement, Krone and Lehmann have suffered damages to their respective business and pecuniary interests, and continue to suffer damages to their respective business and pecuniary interests, as third-party beneficiaries in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

## COUNT THREE
### (Declaratory Judgment against RCK)

61.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Sixty (60), inclusive, above as if the same were fully rewritten herein.

62.     An actual controversy has arisen and now exists between Krone, Lehmann, Holding, and CDB on the one hand, and RCK, Davis and Russo on the other hand, concerning their respective rights and duties under the Operating Agreement.

63.     In accordance with R.C. 2721.01 *et seq.*, Counterclaimants are entitled to a determination that:

- RCK, by and through the actions of its members, Davis and Russo, breached the Development Contract by purporting to terminate Holding's involvement in the Project and terminate CDB's contract with Holding as the construction manager of the Project;

- RCK, by and through the actions of its members, Davis and Russo, breached the Operating Agreement by attempting unilaterally to amend the Operating Agreement without the written approval of Holding;

- RCK, by and through the actions of its members, Davis and Russo, breached the Operating Agreement by committing the Improper Actions; and

- RCK, Davis and Russo are not entitled to pay their respective legal fees out of Journal Storage, LLC's accounts, assets or loan proceeds.

64.     Declaratory relief will serve a useful purpose in clarifying the legal relations at issue by determining how the parties may proceed and by determining that Counterclaimants have acted in compliance with the Operating Agreement while RCK, Davis and Russo have not.

65.     Counterclaimants do not have a plain, adequate or speedy remedy at law.  Declaratory relief is appropriate and constitutes the most efficient remedy for this dispute.

## COUNT FOUR
### (Unjust Enrichment against RCK)

66.     Counterclaimants reallege and incorporate by reference each and every claim,

allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Sixty-five (65), inclusive, above as if the same were fully rewritten herein.

67.     RCK, and its members Davis and Russo, have retained respectively the benefit of Holding's and CDB's services and work on the Project.

68.     Neither RCK nor Davis nor Russo has the expertise or experience in developing self-storage unit projects and all of them have benefited from Holding's involvement and from CDB's knowledge and experience in this area.

69.     RCK, Davis and Russo, and each of them, would be unjustly enriched if it, he or they were allowed to retain the benefit of Holding's involvement and CDB's work and services without providing compensation or reimbursement to Holding and CDB, respectively.

70.     As a direct and proximate result of the actions and resulting unjust enrichment of RCK, Davis and Russo, respectively, Holding and CDB, and each of them, have sustained damages, and will continue to sustain damages, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

71.     As a direct and proximate result of the actions and resulting unjust enrichment of RCK, Davis and Russo, respectively, Krone and Lehmann, and each of them, have suffered damages to their respective business and pecuniary interests as third-party beneficiaries, and continue to suffer damages to their respective business and pecuniary interests as third-party beneficiaries, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

**COUNT FIVE**
**(Breach of Fiduciary Duties against RCK)**

72.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Seventy-one (71), inclusive, above as if the same were fully rewritten herein.

73.     As the majority member of Journal Storage, LLC, RCK owes to Holding as a minority member the fiduciary duties of honesty, loyalty, reasonable due care, good faith, fair dealing, to disclose material information, to account for funds properly, and to refrain from self-dealing or acting in ways that conflict with the interests of other members, as set forth in the common law of Ohio and codified in Chapter 1706 of the Ohio Revised Code.

74.     RCK, by and through the actions of Davis and Russo, breached its fiduciary duties to Holding by, among other things, engaging in the Improper Actions, improperly calling a meeting of Journal Storage, LLC to purportedly vote on and/or approve the Improper Actions, not contributing equity to the Project, causing loan defaults, concealing information from Holding and its members, Krone and Lehmann, and making misrepresentations about the Project to Holding and its members, Krone and Lehmann.

75.     As a direct and proximate result of RCK's, Davis' and Russo's breaches of their respective fiduciary duties, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and their respective rights to payment, and continue to sustain damages to their respective business and pecuniary interests, and their respective rights to payment, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

76.     RCK's malicious and willful conduct, by and through the malicious and willful conduct of its members, Davis and Russo, entitles Holding and its members, Krone and Lehmann, to an award of punitive damages and attorneys' fees in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) to be determined from the evidence introduced at the trial or other merits hearing.

**COUNT SIX**
**(Fraud and Fraud-in-the-Inducement against RCK)**

77.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One

(1) through Seventy-six (76), inclusive, above as if the same were fully rewritten herein.

78.     As detailed herein, RCK and its members, Davis and Russo, made multiple material misrepresentations to Holding, and its members, Krone and Lehmann, regarding the Project, financing for the Project, and RCK's actions.  These representations induced Holding, Krone and Lehmann to agree, among other things, to do business with RCK, to enter into the Development Contract, and to enter into the Operating Agreement.

79.     Among other representations, RCK and its members, Davis and Russo, represented to Holding and its members, Krone and Lehmann, that RCK would contribute the Property to the Development Project free and clear of liens, encumbrances, and any debt, and that RCK would be paid for the Property after completion of the Development Project.

80.     In making these representations, RCK and its members, Davis and Russo, fraudulently concealed that RCK either did not own the Property free and clear of all liens, encumbrances and any debt, or that it planned to use WesBanco loan proceeds to pay for the Property and to satisfy an unrelated Citizens Bank loan.

81.     These deliberate and intentional inducements, material misrepresentations and concealments were intentionally made by RCK and its members, Davis and Russo, to mislead Holding and its members, Krone and Lehmann, so that they would enter into a business relationship with RCK and so that RCK would benefit from Counterclaimants' experience and expertise in developing self-storage facilities.

82.     RCK and its members, Davis and Russo, knew that its inducements, material misrepresentations and concealments were false and misleading when made, and they knew and expected that, by being dishonest and failing to fully disclose the truth to Holding and its members, Krone and Lehmann, that they would rely to their detriment on such material misstatements and concealments.

83.     Holding and its members, Krone and Lehmann, justifiably relied upon the inducements, material misrepresentations, and concealments of RCK and its members, Davis and Russo, by devoting countless hours, resources, materials, and investments into the Project.

84.     As a direct and proximate result of RCK's, Davis' and Russo's intentional fraudulent misrepresentations and frauds-in-the-inducement, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and continue to sustain damages to their respective business and pecuniary interests, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

85.     RCK's, Davis' and Russo's intentional and malicious fraudulent misrepresentations and frauds-in-the-inducement entitle Holding and its members, Krone and Lehmann, to an award of punitive damages and attorneys' fees in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) to be determined from the evidence introduced at the trial or other merits hearing.

## COUNT SEVEN
### (Negligent Misrepresentation against RCK)

86.     Counterclaimants reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Counterclaim set forth in Paragraphs One (1) through Eighty-five (85), inclusive, above as if the same were fully rewritten herein.

87.     RCK and its members, Davis and Russo, owed Holding and its members, Krone and Lehmann, a duty to provide information to them that was accurate and not misleading.

88.     In the course of inducing Holding and its members, Krone and Lehmann, to work with RCK and to continue to work with RCK, RCK and its members, Davis and Russo, supplied false and misleading information and failed to disclose that RCK and its members, Davis and Russo, were going to use, and did use, proceeds from the Citizens Bank loan to pay for the Property.

89.     Holding and its members, Krone and Lehmann, justifiably relied on such information

30

when making the decisions to enter into the Development Contract, to enter into the Operating Agreement, and to continue to do business with RCK.

90.     RCK and its members, Davis and Russo, and each of them, failed to exercise reasonable care and competence in making material misrepresentations to and in concealing material information from Holding and its members, Krone and Lehmann.

91.     As a direct and proximate result of RCK's, Davis' and Russo's negligent misrepresentations and concealments, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and continue to sustain damages to their respective business and pecuniary interests, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

WHEREFORE, Counterclaimants, Scott Krone, James Lehmann, CODA Design + Build LLC, and Scott Krone and James Lehmann d/b/a CODA Management Group, and each of them, hereby demand judgment in their favor against Plaintiff and Counterclaim Defendant, RCK Investments, LLC, for:

1.     Compensatory damages in an amount in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be determined at trial or other merits hearing;

2.     Punitive damages with respect to Counts Five and Six of this Counterclaim in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be determined at trial or other merits hearing;

3.     Declaratory relief as requested in Count Three of this Counterclaim;

4.     Prejudgment interest from and after May 31, 2024, and post-judgment interest from and after the date of final judgment, at the maximum rates allowed by law;

5.     The costs of this action, including reasonable attorneys' fees; and

6.     Such other and further relief as the Court may deem just and proper.

## THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiffs, Scott Krone ("Krone"), James Lehmann ("Lehmann"), CODA Design + Build, LLC ("CDB"), and Scott Krone and James Lehmann d/b/a CODA Management Group ("CMG"), and each of them, for their Third-Party Complaint against Third-Party Defendants, Rodney G. Davis ("Davis") and Christopher T. Russo ("Russo"), and each of them, jointly and severally, hereby claim, allege, state and aver as follows:

92.     Third-Party Plaintiffs reallege and incorporate by reference the claims, allegations, admissions, denials, statements and averments set forth in Paragraphs One (1) through Ninety-one (91), inclusive, of the Answer and Counterclaim set forth above.

93.     Third-Party Plaintiffs bring this Third-Party Complaint against Davis and Russo as a result of their pattern of misconduct, self-dealing, misappropriation, fraud, misrepresentations, breaches of contract, and breaches of fiduciary duties in connection with a development project.

94.     Third-Party Plaintiffs adopt and incorporate by reference herein the Factual Allegations set forth in Paragraphs Nine (9) through Forty-four (44), inclusive, of the Counterclaim rather than repeating them verbatim for purposes of this Third-Party Complaint.

### COUNT ONE
### (Breach of Development Contract by Davis and Russo as Members of RCK)

95.     The Development Contract is a valid, binding and enforceable contract.  Krone and Lehmann as members of Holding fully performed all of the obligations required of it under the terms of the Development Contract.

96.     The Development Contract does not permit RCK or its members, Davis and Russo, to terminate Holding's involvement in the Project, or Holdings' status as the construction manager on the Project, or Holdings' right to enter into a construction contract with CDB to delegate those responsibilities to CDB as a more experienced construction manager of similar projects.

97.     RCK, by and through the actions of its members, Davis and Russo, breached the

Development Contract by attempting to terminate Holding as the contraction manager of the Project and, through Holding, CDB's services under its construction contract.

98.     As a direct and proximate result of RCK's breach of the Development Contract and termination of CDB's services as the construction manager by and through the actions of its members, Davis and Russo, Holding and CDB, and each of them, have sustained damages to their respective business and rights to payment, and continue to sustain damages to their respective business and rights to payment, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

99.     Krone and Lehmann were known to and intended by RCK, Davis and Russo to be third-party beneficiaries of the Development Contract between RCK and Holding and of the construction contract delegating the construction management responsibilities for the Project to CDB.

100.    As a direct and proximate result of RCK's breach of the Development Contract and termination of Holding's involvement in the Project and CDB's services as the construction manager, Krone and Lehmann have suffered damages to their respective business and pecuniary interests as third-party beneficiaries, and continue to suffer damages to their respective business and pecuniary interests as third-party beneficiaries, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

### COUNT TWO
### (Breach of Operating Agreement by Davis and Russo as Members of RCK)

101.    Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Complaint set forth in Paragraphs One (1) through One Hundred (100), inclusive, above as if the same were fully rewritten herein.

102.    The Operating Agreement is a valid, binding and enforceable contract.  Krone and Lehmann as members of Holding fully performed all of the obligations required of it under the terms

of the Operating Agreement.

103.    RCK, Davis and/or Russo breached the Operating Agreement by committing the Improper Actions.  The Operating Agreement does not permit RCK to unilaterally amend its terms. Indeed, pursuant to Paragraph 17.4 of the Operating Agreement, amendments are possible only through written approval of *all* of the Members.

104.    As a member of Journal Storage, LLC, Holding has never approved — in writing or otherwise — amending the Operating Agreement.  Holding has also not provided its approval for any of RCK's, Davis' or Russo's Improper Actions.

105.    Nevertheless, RCK attempted to unilaterally amend the Operating Agreement to eliminate the requirement of unanimous member consent for a capital contribution and to sell substantially all of Journal Storage, LLC's assets.

106.    RCK, Davis and Russo breached the Operating Agreement by attempting to unilaterally amend the Operating Agreement without Holding's approval and by RCK's other Improper Actions.

107.    As a direct and proximate result of the foregoing breaches of the Operating Agreement, Holding has sustained damages, and continues to sustain damages, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

108.    Krone and Lehmann were known to and intended by RCK, Davis and Russo to be third-party beneficiaries of the Operating Agreement for Journal Storage, LLC.

109.    As a direct and proximate result of the foregoing breaches of the Operating Agreement, Krone and Lehmann have suffered damages to their respective business and pecuniary interests, and continue to suffer damages to their respective business and pecuniary interests, as third-party beneficiaries in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

34

## COUNT THREE
### (Declaratory Judgment against Davis and Russo as Members of RCK)

110.    Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Complaint set forth in Paragraphs One (1) through One Hundred Nine (109), inclusive, above as if the same were fully rewritten herein.

111.    An actual controversy has arisen and now exists between Krone, Lehmann, Holding, and CDB on the one hand, and RCK, Davis and Russo on the other hand, concerning their respective rights and duties under the Operating Agreement.

112.    In accordance with R.C. 2721.01 *et seq.*, Third-Party Plaintiffs are entitled to a determination that:

- RCK, by and through the actions of its members, Davis and Russo, breached the Development Contract by purporting to terminate Holding's involvement in the Project and terminate CDB's contract with Holding as the construction manager of the Project;

- RCK, by and through the actions of its members, Davis and Russo, breached the Operating Agreement by attempting unilaterally to amend the Operating Agreement without the written approval of Holding;

- RCK, by and through the actions of its members, Davis and Russo, breached the Operating Agreement by committing the Improper Actions; and

- RCK, Davis and Russo are not entitled to pay their respective legal fees out of Journal Storage, LLC's accounts, assets or loan proceeds.

113.    Declaratory relief will serve a useful purpose in clarifying the legal relations at issue by determining how the parties may proceed and by determining that Third-Party Plaintiffs have acted in compliance with the Operating Agreement while RCK, Davis and Russo have not.

114.    Third-Party Plaintiffs do not have a plain, adequate or speedy remedy at law. Declaratory relief is appropriate and constitutes the most efficient remedy for this dispute.

## COUNT FOUR
### (Unjust Enrichment against RCK)

115.    Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Complaint set forth in Paragraphs One (1) through One Hundred Fourteen (114), inclusive, above as if the same were fully rewritten herein.

116.    RCK, and its members Davis and Russo, have retained respectively the benefit of Holding's and CDB's services and work on the Project.

117.    Neither RCK nor Davis nor Russo has the expertise or experience in developing self-storage unit projects and all of them have benefited from Holding's involvement and from CDB's knowledge and experience in this area.

118.    RCK, Davis and Russo, and each of them, would be unjustly enriched if it, he or they were allowed to retain the benefit of Holding's involvement and CDB's work and services without providing compensation or reimbursement to Holding and CDB, respectively.

119.    As a direct and proximate result of the actions and resulting unjust enrichment of RCK, Davis and Russo, respectively, Holding and CDB, and each of them, have sustained damages, and will continue to sustain damages, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

120.    As a direct and proximate result of the actions and resulting unjust enrichment of RCK, Davis and Russo, respectively, Krone and Lehmann, and each of them, have suffered damages to their respective business and pecuniary interests as third-party beneficiaries, and continue to suffer damages to their respective business and pecuniary interests as third-party beneficiaries, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

## COUNT FIVE
## (Breach of Fiduciary Duties against RCK)

121.    Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Plaintiff set forth in Paragraphs One (1) through One Hundred Twenty (120), inclusive, above as if the same were fully rewritten herein.

122.    As the majority member of Journal Storage, LLC, RCK, by and through its members, Davis and Russo, owes to Holding as a minority member the fiduciary duties of honesty, loyalty, reasonable due care, good faith, fair dealing, to disclose material information, to account for funds properly, and to refrain from self-dealing or acting in ways that conflict with the interests of other members, as set forth in the common law of Ohio and codified in Chapter 1706 of the Ohio Revised Code.

123.    RCK, by and through the actions of Davis and Russo, breached its fiduciary duties to Holding by, among other things, engaging in the Improper Actions, improperly calling a meeting of Journal Storage, LLC to purportedly vote on and/or approve the Improper Actions, not contributing equity to the Project, causing loan defaults, concealing information from Holding and its members, Krone and Lehmann, and making misrepresentations about the Project to Holding and its members, Krone and Lehmann.

124.    As a direct and proximate result of RCK's, Davis' and Russo's breaches of their respective fiduciary duties, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and their respective rights to payment, and continue to sustain damages to their respective business and pecuniary interests, and their respective rights to payment, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

125.    RCK's malicious and willful conduct, by and through the malicious and willful conduct

37

of its members, Davis and Russo, entitles Holding and its members, Krone and Lehmann, to an award of punitive damages and attorneys' fees in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) to be determined from the evidence introduced at the trial or other merits hearing.

**COUNT SIX**
**(Fraud and Fraud-in-the-Inducement against RCK)**

126.     Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Complaint set forth in Paragraphs One (1) through One Hundred Twenty-five (125), inclusive, above as if the same were fully rewritten herein.

127.     As detailed herein, RCK and its members, Davis and Russo, made multiple material misrepresentations to Holding, and its members, Krone and Lehmann, regarding the Project, financing for the Project, and RCK's actions.  These representations induced Holding, Krone and Lehmann to agree, among other things, to do business with RCK, to enter into the Development Contract, and to enter into the Operating Agreement.

128.     Among other representations, RCK and its members, Davis and Russo, represented to Holding and its members, Krone and Lehmann, that RCK would contribute the Property to the Development Project free and clear of liens, encumbrances, and any debt, and that RCK would be paid for the Property after completion of the Development Project.

129.     In making these representations, RCK and its members, Davis and Russo, fraudulently concealed that RCK either did not own the Property free and clear of all liens, encumbrances and any debt, or that it planned to use WesBanco loan proceeds to pay for the Property and to satisfy an unrelated Citizens Bank loan.

130.     These deliberate and intentional inducements, material misrepresentations and concealments were intentionally made by RCK and its members, Davis and Russo, to mislead Holding and its members, Krone and Lehmann, so that they would enter into a business relationship with RCK

and so that RCK would benefit from Counterclaimants' experience and expertise in developing self-storage facilities.

131.    RCK and its members, Davis and Russo, knew that its inducements, material misrepresentations and concealments were false and misleading when made, and they knew and expected that, by being dishonest and failing to fully disclose the truth to Holding and its members, Krone and Lehmann, that they would rely to their detriment on such material misstatements and concealments.

132.    Holding and its members, Krone and Lehmann, justifiably relied upon the inducements, material misrepresentations, and concealments of RCK and its members, Davis and Russo, by devoting countless hours, resources, materials, and investments into the Project.

133.    As a direct and proximate result of RCK's, Davis' and Russo's intentional fraudulent misrepresentations and frauds-in-the-inducement, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and continue to sustain damages to their respective business and pecuniary interests, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

134.    RCK's, Davis' and Russo's intentional and malicious fraudulent misrepresentations and frauds-in-the-inducement entitle Holding and its members, Krone and Lehmann, to an award of punitive damages and attorneys' fees in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) to be determined from the evidence introduced at the trial or other merits hearing.

### COUNT SEVEN
### (Negligent Misrepresentation against RCK)

135.    Third-Party Plaintiffs reallege and incorporate by reference each and every claim, allegation, admission, denial, statement and averment of this Answer, Counterclaim and Third-Party Complaint set forth in Paragraphs One (1) through One Hundred Thirty-four (134), inclusive, above

39

as if the same were fully rewritten herein.

136. RCK and its members, Davis and Russo, owed Holding and its members, Krone and Lehmann, a duty to provide information to them that was accurate and not misleading.

137. In the course of inducing Holding and its members, Krone and Lehmann, to work with RCK and to continue to work with RCK, RCK and its members, Davis and Russo, supplied false and misleading information and failed to disclose that RCK and its members, Davis and Russo, were going to use, and did use, proceeds from the Citizens Bank loan to pay for the Property.

138. Holding and its members, Krone and Lehmann, justifiably relied on such information when making the decisions to enter into the Development Contract, to enter into the Operating Agreement, and to continue to do business with RCK.

139. RCK and its members, Davis and Russo, and each of them, failed to exercise reasonable care and competence in making material misrepresentations to and in concealing material information from Holding and its members, Krone and Lehmann.

140. As a direct and proximate result of RCK's, Davis' and Russo's negligent misrepresentations and concealments, Holding and its members, Krone and Lehmann, have sustained damages to their respective business and pecuniary interests, and continue to sustain damages to their respective business and pecuniary interests, in amounts in excess of Seventy-five Thousand Dollars ($75,000.00) to be proven from the evidence introduced at trial or other merits hearing.

WHEREFORE, Third-Party Plaintiffs, Scott Krone, James Lehmann, CODA Design + Build LLC, and Scott Krone and James Lehmann d/b/a CODA Management Group, and each of them, hereby demand judgment in their favor against Third-Party Defendants, Rodney G. Davis and Christopher T. Russo, and each of them, jointly and severally, for:

1. Compensatory damages in an amount in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be determined at trial or other merits hearing;

2.      Punitive damages with respect to Counts Five and Six of this Third-Party Complaint in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) to be determined at trial or other merits hearing;

3.      Declaratory relief as requested in Count Three of this Third-Party Complaint;

4.      Prejudgment interest from and after May 31, 2024, and post-judgment interest from and after the date of final judgment, at the maximum rates allowed by law;

5.      The costs of this action, including reasonable attorneys' fees; and

6.      Such other and further relief as the Court may deem just and proper.

Date:  May 9, 2025                              /s/ *Eric H. Zagrans*

Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
1640 Roundwyck Lane
Columbus, Ohio 43065
(440) 452-7100 (telephone)
(866) 261-2008 (facsimile)
eric@zagrans.com (e-mail)

*Attorney for Defendants, Counterclaimants and Third-Party Plaintiffs*

## JURY DEMAND

Defendants, Counterclaimants and Third-Party Plaintiffs hereby demand a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

/s/ *Eric H. Zagrans*

Eric H. Zagrans

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 9, 2025, I filed the foregoing Defendants' Answer, Counterclaim and Third-Party Complaint using the Court's electronic case filing system and served it on Plaintiff's counsel of record who may access the document via the Court's ECF system.

/s/ *Eric H. Zagrans*
Eric H. Zagrans